**E-FILED**

Thursday, 17 November, 2005 11:41:33 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**FILED**

NOV 1 7 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| David Bivens, _____ ) | |
| _____ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-1359 |
| ) | (Supplied by Clerk) |
| Michael P. Mesch, Lt. ____ ) | |
| Roeper, et al., _____ ) | |
| ) | |
| Defendant(s). ) | |

### PETITION AND AFFIDAVIT FOR LEAVE
### TO PROCEED IN FORMA PAUPERIS

I, David Bivens _____, plaintiff or
petitioner, move the court for leave to proceed _in forma
pauperis_ in the above-named action. I declare under
penalty of perjury that the following facts are true:

1. I am the party initiating this action and I
believe I am entitled to redress.

2. I am unable to prepay the fees and costs of
this proceeding, or to give security, because of my
poverty.

3. I am (check one) Single ___ Married ✓
Separated ___ Divorced ___

4. My responses to the following questions are
true:

A. Are you presently employed in any capacity
including a paying position while incarcerated as an
inmate in a correctional center?
Yes ( ✓ )    No (    )

B. If so, by whom, what is your position, and
what is your pay? Dietary Worker, $20.00 per month. When I
leave DOC on Nov. 30th, 2005, I will not have a job for a while.

C. If not, when were you last employed and what
was your pay? This includes prior inmate positions?
_____
_____

1

D.  Have you received money from any other source,
including judgments, in the last 12 months?
Yes ( ✓ )   No (   )   If yes, describe each source and
state how much you received.
_My wife - 25.00 on Oct. 27, 2005_

E.  If you are presently incarcerated, how much
money do you have in your institutional trust fund
account?  _$.13_

F.  If withdrawals were made from your
institutional trust fund account during the past 12
months, please explain when, how much, and the purpose
for which funds were used.
_(for when, see attached printout)(for how much, see attached printout)_
_The purpose of the funds were to pay for cosmetic supplies, pens,_
_paper, and to defray the costs of copying my grievance for postage_

G.  How much money do you have in private checking
or saving accounts?
_No such accounts_

H.  Do you own any real estate, stocks, bonds,
notes, automobiles, or other valuable property,
including audio visual equipment such as T.V.s,
stereos, etc. (except for ordinary household furniture
and clothing)? Yes ( ✓ ) No (   )

If yes, describe the property and its approximate
value:  _T.V.  (She, my wife, bought it since I've been_
_incarcerated, and I do not yet know the value)_

I.  Do you have any debts or obligations?
Yes (   ) No ( ✓ )

If yes, list the amount owed, to whom, and any
current payments that you are making.

J.  List your dependents, state your relationship
to them, and state how much you contribute to their
support each month.  Also, state how long you have
contributed to that support and other means by which
your dependents receive support.
_No kids or dependants_

2

K.    Estimate the total amount of income or support that your dependents receive per month on an average, excluding your contributes to them.

no dependents

I declare under penalty of perjury and fine that the foregoing is true and correct and that I have a continuing duty to advise the court of any changes in my financial position as stated above.

David Burns
SIGNATURE

11-15-05
DATE

(See attached Printout + Certificate)

3

REPORT CRITERIA  -  Date: 05/01/2005 thru End;     Inmate: N94630;     Active Status Only ? : No;     Print
Restrictions ? : Yes;     Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include
Inmate Totals ? : Yes;     Print Balance Errors Only ? : No

**Inmate: N94630 Bivens, David**                         **Housing Unit: WIL-02-D -32**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | **Beginning Balance:** | | 0.00 |
| 08/29/05 | Mail Room | 04 Intake and Transfers In | 241215 | 56698 | Pontiac C.C. | 40.11 | 40.11 |
| 08/31/05 | Disbursements | 90 Medical Co-Pay | 243333 | Chk #75286 | 4499, DOC: 523 Fund Reimbursem, Inv. Date: 08/23/2005 | -2.00 | 38.11 |
| 09/15/05 | Mail Room | 04 Intake and Transfers In | 258215 | 56779 | Pontiac C.C. | 5.44 | 43.55 |
| 09/16/05 | Payroll | 20 Payroll Adjustment | 259133 | | P/R month of 08/2005 | 4.76 | 48.31 |
| 09/27/05 | Disbursements | 84 Library | 270333 | Chk #75569 | 4785, DOC: Library Copies,     Inv. Date: 09/19/2005 | -.45 | 47.86 |
| 09/27/05 | Disbursements | 81 Legal Postage | 270333 | Chk #75571 | 4805, DOC: 523 Fund Reimbursem, Inv. Date: 09/21/2005 | -.60 | 47.26 |
| 09/29/05 | Point of Sale | 60 Commissary | 272704 | 463994 | Commissary | -32.25 | 15.01 |
| 10/05/05 | Point of Sale | 60 Commissary | 278704 | 464827 | Commissary | -14.19 | .82 |
| 10/14/05 | Payroll | 20 Payroll Adjustment | 287130 | | P/R month of 09/2005 | 13.45 | 14.27 |
| 10/25/05 | Point of Sale | 60 Commissary | 298751 | 467104 | Commissary | -14.25 | .02 |
| 10/27/05 | Mail Room | 01 MO/Checks (Not Held) | 300215 | 5465450615 | Bivens, Diane | 25.00 | 25.02 |
| 11/01/05 | Point of Sale | 60 Commissary | 305704 | 467890 | Commissary | -24.89 | .13 |

| | |
|---|---|
| **Total Inmate Funds:** | .13 |
| **Less Funds Held For Orders:** | .00 |
| **Less Funds Restricted:** | .00 |
| **Funds Available:** | .13 |
| **Total Furloughs:** | .00 |
| **Total Voluntary Restitutions:** | .00 |

## CERTIFICATE

(To be complete for prisoners only.   This is a statement by the prison and not the prisoner.)

I hereby certify that the plaintiff or petitioner in this action has the sum of $ ..13 _____ in his trust account at the correctional center where he is confined.   I further certify that the plaintiff or petitioner has the following securities to his credit according to the records of this institution:

_____ Not known _____

_____

_____

_____

_____

_____

*Buerly J Engelluerht*
(Authorized Officer)

Western Illinois Corr Center
(Institution)

Trust Fund Officer
(Title)

DATE   November 1, 2005

IMPORTANT
(THIS CERTIFICATE MUST BE ACCOMPANIED BY A TWELVE MONTH LEDGER   OF   THE   PLAINTIFF/PETITIONER'S   TRUST   FUND ACCOUNT.)

E-FILED
Thursday, 17 November, 2005  11:42:02 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

DAVID BIVENS,                                    )
                    Plaintiff,                   )
                                                 )
          -vs-                                   )   Case No. 05-1359
                                                 )
MICHAEL P. MESCH,                                )
LT. ROEPER, Grievance                            )
Officer P. HASTINGS, Warden                      )
of Pontiac Farm GUY D. PIERCE,                   )
Member of the Administrative Review Board        )
JACKIE MILLER, and Director                      )
ROGER E. WALKER, JR., in their                   )
individual and official capacities,             )
                    Defendants.                  )

## CIVIL RIGHTS COMPLAINT

Plaintiff, DAVID BIVENS, complains against defendants
Michael P. Mesch, Lt. Roeper, P. Hastings, Guy D. Pierce,
Jackie Miller, and Roger E. Walker, Jr., and states as
follows:

## PRELIMINARY STATEMENT

This is a civil rights complaint filed under 42 U.S.C.
§1983 alleging violations of plaintiff's constitutional rights under
the First and Fourteenth Amendments, where, after making

1

complaints regarding staff misconduct, plaintiff was subjected to
retaliatory segregated confinement, false disciplinary charges,
and a transfer. Further, despite a grievance being filed,
the defendants addressed events never grieved. The actions
of the defendants were arbitrary and capricious, and served no
legitimate penological purpose.

## PARTIES

1) Plaintiff, David Bivens ("Bivens") is an individual
residing in the State of Illinois, and is currently an inmate at
Western Illinois Correctional Center, Mt. Sterling, Illinois. The
events giving rise to this complaint occurred at the Pontiac
Correctional Center, Pontiac, Illinois.

2) Defendant, Michael P. Mesch, was at all times
relevant to this complaint, employeed by the Illinois Department
of Corrections at Pontiac Correctional Center as a correctional
officer and was acting under color of law.

3) Defendant, Lt. Roeper, was at all times relevant to this
complaint, employed by the Illinois Department of Corrections
at Pontiac Correctional Center as a lieutenant and was
acting under color of law.

4) Defendant, P. Hastings, was at all times relevant to
this complaint, employed by the Illinois Department of Corrections
at Pontiac Correctional Center as a grievance officer and
was acting under color of law.

2

5) Defendant, Guy D. Pierce, was at all times relevant to this complaint, employed by the Illinois Department of Corrections at Pontiac Correctional Center as the warden of the maximum and medium security units and was acting under color of law.

6) Defendant, Jackie Miller, was at all time relevant to this complaint, employed by the Illinois Department of Corrections as a member of the Administrative Review Board and was acting under color of law.

7) Defendant, Roger E. Walker, Jr., was at all times relevant to this complaint, employed by the Illinois Department of Corrections as the Director and was acting under color of law.

## JURISDICTION AND VENUE

8) Jurisdiction is proper in the district court pursuant to 28 U.S.C. §§ 1331 and 1343 because the allegations in this complaint present a federal question.

9) Venue is appropriate under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred at Pontiac Correctional Center, Pontiac, Illinois, which is located within the U.S. District Court for the Central District of Illinois.

## FACTS

10) Bivens arrived at Pontiac Farm in June of 2005, which is classified as a medium security unit. Bivens was thereafter assigned to D-dorm within the receiving unit. D-dorm consisted of six inmates.

11) At the time of Biven's arrival, the entire Pontiac Correctional Center was on lockdown.

12) D-dorm is set up in a way that toilet and shower facilities are located outside the dorm, requiring inmates to leave the dorm to access the facilities. Upon information and belief, whether on lockdown or not, doors are always open to enable inmates to use the bathroom.

13) After Bivens' arrival in D-dorm, Bivens learned that defendant Mesch, who worked the 7am to 3pm shift, maintained a practice of keeping the doors locked, thereby denying inmates the ability to access the toilet/shower facilities.

14) On July 9, 2005, Bivens observed one of his dorm mates ask defendant Mesch if he could use the bathroom, and Mesch refused his request. Bivens and his dorm mates then requested defendant Mesch if they could speak to a supervisor concerning Mesch's practices, who then agreed to call the major.

4

15) Shortly thereafter, Major Melvin (who is not a named defendant) and defendant Lt. Roeper arrived to speak to Bivens and his dorm occupants. Amongst the six dorm occupants, Bivens took a central role in addressing the group's complaints concerning defendant Mesch's practices, while defendant Mesch starred intently at Bivens.

16) In response to Bivens' complaints, and in Bivens' presence, both supervisors instructed defendant Mesch not to deny Bivens and the dorm occupants access to the bathroom.

17) The following day, July 10, 2005, Bivens was in the dayroom without wearing a shirt. Despite a rule existing requiring inmates to wear their shirt while outside their assigned dorms, the rule is not enforced, inmates regularly do not wear shirts in the dayroom, and Bivens specifically observed a caucasion inmate sitting in the control room with defendant Mesch. Nonetheless, defendant Mesch called to Bivens. Defendant Mesch chastized Bivens for not wearing a shirt, and threatened to charge him with a disciplinary infraction.

18) Bivens informed defendant Mesch of the shirtless inmate in the control room, and Mesch responded that he did not care about other inmates. Consequently, Bivens requested a grievance form, and Mesch gave him one while smiling at him.

5

19) Then, about five inmates later, defendant Mesch informed Bivens that Bivens had to report to defendant Roeper's office. After Bivens arrived, Roeper asked Bivens about what previously occurred, wherethen Bivens explained the incident to him. Despite and in response to Bivens' information, defendant Roeper threatened Bivens by stating that if he kept giving his officer's trouble that he (Roeper) would make sure Bivens would go to segregation.

20) The following day, July 11, 2005, when Bivens returned from the yard, Bivens was informed by a dorm mate that defendant Mesch searched his property box and recovered a plastic bag. Bivens then asked defendant Mesch if he could have a shakedown slip to document the search and property confiscated, and Mesch refused.

21) Bivens then asked Mesch for a grievance form, whereupon, Mesch called defendant Roeper in Bivens' presence and inquired to Roeper whether he should give Bivens a grievance. Mesch then issued Bivens a grievance form, following which, approximately five minutes later, Mesch entered Bivens' cell to issue him a disciplinary report for Viglation of Rules, and shakedown slip, ordered Bivens to again report to defendant Roeper's office.

22) When Bivens entered defendant Roeper's office, defendant Mesch was present (who arrived ahead of Bivens).

6

Roeper asked Bivens what occurred, wherethen Bivens again explained the incident involving Mesch, and recited the rule providing for shakedown slips to be issued following searches of cells/dorms. Despite and in response to Bivens' answers, Roeper informed Bivens that irregardless of the rules that Bivens could not come down (to Pontiac Farm) and try to change things, and again threatened to place Bivens in segregation.

23) Subsequently, Bivens returned to his unit and immediately called his wife on the monitored phone system. Bivens relayed to her what occurred with defendants Mesch and Roeper, instructed her to contact the Illinois Department of Corrections in Springfield, and stated that he would file a grievance.

24) Then, unbeknowst to Bivens, on July 12, 2005, defendant Mesch wrote a disciplinary report charging Bivens with Intimidation and Threats, and, Dangerous Communications. (See attached Disciplinary Report) The report stated as follows:

"On the above date and approx. time this C/o overheard Offender Bivens N94630 on the phone saying he was going to knock this C/o out and that he was tired of this shit, meaning the M.S.U. rules. Offender also stated he was not like the rest of these inmates out here. Offender knew this C/o was on the gallery and pointed directly at me as he was talking. This C/o knows Offender by name and face."

25) The following day, July 13, 2005, defendant Roeper approved of the disciplinary report and classified it as "Major." Also on the same date, Major Quinley ordered Bivens to be placed in temporary confinement based on the nature of offense.

26) On July 13, 2005, Bivens was moved to a different dorm in which defendant Mesch did not work. However, that evening, upon returning from dinner, two lieutenants and three officers entered Bivens' dorm, told Bivens to "cuff-up," and informed Bivens of defendant Mesch's charges. The officers then took Bivens to segregation in the maximum security section of Pontiac.

27) When Bivens attended the Adjustment Committee hearing on July 20, 2005, Bivens informed the members that he never made any threatening or dangerous statements, and, asserted that he was in defendant Roeper's office at the time defendant Mesch claimed the incident took place. The members informed Bivens that the phone conversation was recorded and listened to by them and that they could not find anywhere that Bivens threatened defendant Mesch. The members then "dismissed" the charges. (See attached Final Summary Report)

28) Although the disciplinary charges were dismissed, Bivens remained in segregation for approximately two more weeks. When Bivens was finally released he was again assigned to D-dorm.

8

29) Upon information, while Bivens was in segregation, defendant Mesch was assigned to the sally-port due to another unknown incident. However, following Bivens' release from segregation and reassignment to D-dorm, Mesch was reassigned to D-dorm also.

30) While Bivens remained in D-dorm defendant Mesch provoked and harassed Bivens, in that, Mesch starred at Bivens while Bivens was in the dayroom (tracking Bivens wherever Bivens was at), and, entered Bivens dorm frequently to look around and then stare at Bivens with what appeared to be a look of disdain.

31) Consequently, Bivens spoke to a counselor, Ms. Kelly, and informed her of defendant Mesch's aforestated actions and how Mesch was again assigned to D-dorm and was continuing to harass him.

32) A few days later Bivens was reassigned to another unit, away from defendant Mesch.

33) Bivens filed a grievance over defendant Mesch's disciplinary report of July 12th for Intimidation and Threats, and, Dangerous Communications. The grievance, dated July 27, 2005, was the only grievance that Bivens filed and was assigned Number 040912. (Copy of Grievance attached)

34) Approximately 20 days after Bivens filed his grievance he was transferred to Western Illinois Correctional Center without explanation.

35) Upon information and belief, Western Illinois Correctional Center is classified as a maximum security prison, and is a known disciplinary institution housing offenders involved in disciplinary infractions from other institutions.

36) On August 30, 2005, the Warden of Pontiac, being defendant Pierce, and defendant Hastings issued a Grievance Officer's Report concerning Bivens' grievance, No. 040912. Despite the defendants referring to Mesch's July 12th disciplinary report and Bivens' grievance bearing the grievance number of 040912, and, that the grievance dealth with the charges of Threats and Intimidation and Dangerous Communications, the defendants reveiwed Mesch's disciplinary report for Violation of Rules, for the plastic bag Mesch confiscated, as described in paragraph 21. (Grievance Officer's Report attached hereto)

37) At no time did Bivens ever file any grievance concerning defendant Mesch's disciplinary charges for Violation of Rules.

38) Consequently, Bivens appealed defendant Pierce's and defendant Hastings decision to the Administra-

tive Review Board on September 15, 2005. Accompany-
ing the appeal was a letter from **Bivens** articulating
the defendant's errors. (Copy of letter attached hereto)

39) On October 13, 2005, defendant Miller of
the Administrative Review Board and defendant Walker
responded to Bivens' grievance appeal. Both defendants
disregarded Bivens letter in that they continued to
review the disciplinary report for Violation of Rules
which Bivens never grieved, and denied Bivens'
grievance. (Letter from ARB and Director attached hereto)

40) Subsequently, Bivens consulted his assigned
counselor on October 27, 2005, who informed Bivens
that no grievance existed in Biven's Master File
concerning defendant Mesch's disciplinary report for
Violation of Rules.

41) Bivens has exhausted all available administrative
remedies.

43) Filing false disciplinary charges and imprisoning
Bivens in segregation following Bivens complaints in the manner
set forth above constitutes a violation of his right to seek
redress of grievances without retaliation, as guaranteed by
the First and Fourteenth Amendments to the U.S.
Constitution.

43) Transferring Bivens to Western Illinois Correctional Center following dismissal of the disciplinary charges, release from segregation to population, and Bivens' complaints in the manner set forth above constitutes a violation of his right to seek redress of grievances without retaliation, as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

44) The review of Bivens' grievance in the manner set forth above constitutes a violation of his right of access to the courts (by exhausting administrative remedies) and to receive due process, as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

45) The filing of false disciplinary charges as described was done under the direction and supervision of defendant Roeper, who knowingly, intentionally and with reckless disregard for the rights of **Bivens** violated the U.S. Constitution, in an effort to purposely punish Bivens.

46) The review of Bivens' grievance as described was done under the direction and supervision of defendants Pierce, Miller, and Walker, who knowingly, intentionally and with reckless disregard for the rights of Bivens violated the U.S. Constitution, in an effort to purposely inhibit his access to the courts.

For all of the foregoing reasons, plaintiff, David Bivens, prays this court for entry of judgment in his favor finding each of the defendants liable in their respective capacities, award compensatory and punitive damages in the total amount in excess of $200,000, costs of reasonable attorney's fees if counsel is appointed in accordance with U.S.C. § 1988, and other such relief deemed just and necessary.

<u>PLAINTIFF DEMANDS A TRIAL BY JURY</u>

David Bivens
Plaintiff


David Bivens
Reg. No. N94630
Western Illinois Correctional Center
R.R. 4, Box 196
Mt. Sterling, Illinois 62353-9479

Plaintiff, <u>Pro-se</u>

13

## VERIFICATION

I, David Bivens, hereby state pursuant to 28 U.S.C. § 1746, that I have read the foregoing civil rights complaint, and that the statements made therein are true and correct, based upon knowledge and belief, under the penalty of perjury.

11-15-05
Executed on

David Bivens
David Bivens

14

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

0 4 0 9 1 2

Date: 7-27-05

Committed Person: (Please Print) DAVID Bivens

ID#: N-94630

Present Facility: Pontiac C.C.

Facility where grievance issue occurred: West Seg 309

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ Disability
☐ Staff Conduct  ☐ Dietary  ☐ Medical Treatment  ☐ Other (specify): _____
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator

☑ Disciplinary Report: 7 / 12 / 05  Pontiac, MSU  D-Dorm LM 200
Date of Report    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: On the above date And Approx time 2:15
I David Bivens Was on the phone in D-Dorm of the
M.S.U. Dayroom, when officer Micheal Mesch was walking
on the Dayroom And Said that he heard I David Bivens
state on the phone I was going to knock this 4/o out,
officer Mesch wrote a Disciplinary Report, of two Charge
206 Intimidation or Threats, 208 Dangerous Communication
which I was falsely Accused of, Then officer Mesch
state in the report that, I David Bivens stated I was
not like the rest of the Inmate's here, continue over

Relief Requested: I would like not get transfer from pontiac I would like to
be released out of west seg and go back to the farm, I am
schedule to see the parole Board Aug 10-05, I might be going home.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

David Bivens
Committed Person's Signature    N-94630  7 / 27 / 05
ID#    Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ___/___/___  ☐ Send directly to Grievance Officer  ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name    Counselor's Signature    Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___   Is this determined to be of an emergency nature?  ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature    Date

Distribution: Master File; Committed Person    Page 1    DOC 0046 (Eff. 10/2001)
(Replaces DC 5657)
Printed on Recycled Paper

And also officer Mesch Stated in his report that why I David Bivens was on the phone that I pointed at him Meaning that I was talking to King I David Bivens was placed in Temporary Confinement on 7-13-05 which every thing took place on 7-12-05, I David Bivens seen the Committed on 7-20-05 which at this time Lt. ELLinger, had investigatived the Phone Call, And Lt. ELLinger Told I David Bivens he Contacted % J, MALUAR about the tape ConverSation, And Lt. ELLinger Came to the ADJustment Committee and Said he could not find Anywhere that I Bivens Threatened the RIE or Addressed any Type of Threat to the RIE so the Committed Dismissal the DR and gave me Time Served, and Expunged, I David Bivens was let out of northhouse seg and took to west house Seg, on 7-21-05 why. There was no reason for me took Come to west house, I wrote Counlselor flex About why I am back here, And Counselor flex wrote back and said, I David Bivens has been Submitted for A Transfer out of penting, for what reason there Isn no reason, If the Committed found I Bivens not guilty why Should I be in west Seg & ~ Submitted for A transfer

Thank you

WIL

| | | Grievance Officer's Report | |

**Date Received**: July 28, 2005    Review: August 25, 2005    ·**Grievance #** (optional): 040912

**Committed Person**: David Bivens    **ID#**: N-94630

**Nature of Grievance**: IDR of 07-12-05 by C/O Mesch

**Facts Reviewed:** A review of the Program Unit Disciplinary Report reflects charges of #404 Violation of Rules CProperty Box Compliance). A description of how the offender violated the charges is discribed in the observation section of the Disciplinary Report. The Reviewing Officer determined the report to be minor in nature. The Hearing Investigator did not review Disciplinary Report. 24-hour notice of charges does not need to be waived, the report can be reviewed immediately by the Program Unit Hearing Officer after the offender receives a copy.

A review of the Program Unit Hearing report indicates the Disciplinary report was reviewed by the Program Committee within the appropriate timeframe. Contacting requested witness'es is not required. The Record of Proceedings contains a summarized statement by the offender. ( Pleads Guilty ) The Hearing Officer determined the offender guilty of #404 Rules Violation (Property Box). The Basis for Decision indicates a complete rationale indicating why the offender was found guilty. That rationale being the observation of the reporting employee and offender's guilty plea. The Hearing Officer does not need to be a minority. However, within the pool of employee's to review Program Unit reports, one individual is a minority.

Disciplineary action imposed, and approved by the CAO, is in accordance with DR 504A.

**Recommendation:** Based upon a total review of all available information, and a compliance check of the procedural due process safeguards outlined in department Rule 504, this Grievance Officer recommends that the Offender's grievance be DENIED.

P. HASTIN gS   CCI/b
Print Grievance Officer's Name    Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| **Chief Administrative Officer's Response** |

**Date Received**: 8/30/05    ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments**:

Chief Administrative Officer's Signature    8/30/05
Date

| **Committed Person's Appeal To The Director** |

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 627948277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature    N-94630   9-15-05
ID#    Date

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT**   Page ___ of ___

☒ Disciplinary Report _____ Date ___   ☐ Investigative Report _____ Date

Committed Person: __BIVENS__   No. __N94630__   Facility __Pontiac C.C.__

Observation Date: __7-12-05__   Time: APP. 2:15   IDB Location: __D-DORM   DAYROOM APP.__

__C.M. Clark MESCH 3340__          __M. Clark March 23940  7-13-05__
PRINT Employee's Name                    Employee's Signature/Date/Time

Offense: 504.9 __206 INTIMIDATION OR THREATS, 208 DANGEROUS COMMUNICATION__

Observation: __On the above date and approx. time__
__this I/O overheard Offender Bivens N94630__
__on the phone, saying he was going to__
__knock this M/O out that he was__
__tired of this shit, meaning the M.I.U. inmates.__
__Offender also stated he was not like the__
__rest of those inmates on here. Offender__

Witnesses, if any: _____

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☒ Temporary Confinement   ☐ Investigative Status   Reasons: __Nature of Offense__

__Maj. Conley__                                  __Maj. Cty   7-13-05__
PRINT Name                              Shift Supervisor's Signature and Date
                              (For Community Correctional Centers, Chief Adm. Off.)

☒ Confinement Reviewed by Reviewing Officer   Comment: __Nature of Offense__
__Maj. Conley__                              __Maj. Cty Cooer__
PRINT Name                              Signature/Date

☒ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit
__C.T. Jun Kop__                              __Kop 3341   7-13-05__
PRINT Name                              Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator: _____   _____
(Adult Division Major Reports Only)   PRINT Name   Signature and Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

Committed Person Refused to Sign ☒

-----
Committed Person's Signature and Number

__M. Cecchetty Bruer__          __Lt. 2341__          __14 July 2005   App 3:48__ ___ am/pm
PRINT Serving Employee's Name   Serving Employee's Signature   Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____          -----
                              Committed Person's Signature and Number

(DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING)

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of _____ Date

NAME OF WITNESS: _____   Number/Cell/Title: _____

Witness can testify to: _____

NAME OF WITNESS: _____   Number/Cell/Title: _____

Witness can testify to: _____

-----
                              Committed Person's Name and Number

DC 7205 (Rev. 4/99)   Distribution: 1) Master File; 2) Committed Person;
IL 426-0361                      3) Facility; 4) Facility

RECEIVED
SEP 19 2005
OFFICE OF
INMATE ISSUES

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT/SUMMARY**
(Continuation Page)

Page 2 of 2

☒ Disciplinary Report    ☐ Disciplinary Summary

Committed Person: BIVENS                    No. N 94630

Offense Date: 2-12-05   Time: 10:15 am/pm   Location: D-DORM  Facility: Pontiac C.C.

knew this C/O was on the gallery and
pointed directly at me as he was talking
This C/O knows Offender by name and
face.

RECEIVED

SEP 1 9 ...

OFFICE OF
STATE ISSUES

DC 7212 (Eff. 06/88)    Distribution: 1) Master File; 2) Committed Person; 3) Facility; 4) Facility
IL 426-11612

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | |
|---|---|---|
| **Name:** BIVENS, DAVID | **IDOC Number:** N94630 | **Race:** BLK |
| **Hearing Date/Time:** 7/20/05   09:48 AM | **Living Unit:** PON-WR-03-09 | **Orientation Status:** Phase 2 |
| **Incident Number:** 200503436/1 - PON | **Status:** Expunged Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 7/12/05 | 200503436/1-PON | MESCH, MICHAEL P | MSU D DORM | 02:15 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 206 | Intimidation Or Threats | |
| 208 | Dangerous Communications | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS
REPORT READ.  OFFENDER BIVENS STATED HE IS NOT GUILTY. OFFENDER FURTHER STATED, "HOW'S HE GONNA SAY I WAS ON THE PHONE, WHEN I WAS IN THE MAJOR'S OFFICE WITH HIM AT THE SAME TIME?

**NOTE: THE COMMITTEE CHAIRPERSON CONTACTED IA (C/O J. MALNAR) REGARDING THE "THREATENING" PHONE CALL. THE COMMITTEE CHAIRPERSON (LT. R. ELLINGER) LISTENING TO BIVENS' CONVERSATION, AND COULD NOT FIND ANYWHERE THAT BIVENS THREATENED THE R/E OR ADDRESSED ANY TYPE OF THREAT TO THE R/E.

## BASIS FOR DECISION
BASED ON THE REVIEWING OF BIVENS' TAPE CONVERSATION AND ITS LACK OF THREATS; THE COMMITTEE IS DISMISSING THE DR.

**TIME SERVED**

## DISCIPLINARY ACTION   *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| | ---- E X P U N G E D ---- |

**Discipline Reason:**   **EXTENT/DEGREE OF PARTICIPATION**

## Signatures
### Hearing Committee

| | | Date | Race |
|---|---|---|---|
| ELLINGER, ROBERT E  - Chair Person | *(signature)* | 07/20/05 | WHI |
| HOWARD, ERIKA R | *(signature)* | 07/20/05 | WHI |
| MILLSAP, UNDRAY | *(signature)* | 07/20/05 | BLK |

Recommended Action Approved


RECEIVED
OFFICE OF
INMATE ISSUES

**Final Comments:** N/A

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** BIVENS, DAVID      **IDOC Number:** N94630      **Race:** BLK

**Hearing Date/Time:** 7/20/05  09:48 AM      **Living Unit:** PON-WR-03-09      **Orientation Status:** Phase 2

**Incident Number:** 200503436/1 - PON      **Status:** Expunged Final

___

GUY D PIERCE / MPM  7/21/05           07/21/05

**Chief Administrative Officer**           **Signature**           **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

**Employee Serving Copy to Committed Person**      7-27-05  3:00pm      **When Served - - Date and Time**

**RECEIVED**

**OFFICE OF INMATE ISSUES**



David Bivens
Reg. No. N94630
Western Illinois Correctional Center
R.R. 4, Box 196
Mt. Sterling, Illinois 62353-9479

Administrative Review Board
1301 Concordia Court
Springfield, Illinois 62794-9277

September 15, 2005                    Re: Grievance No. 040912

Dear ARB:

I am writing you concerning a disciplinary report, the Adjustment
Committee's disposition, the grievance that followed, and the subsequent
Grievance Officer's Report. The Grievance Officer's Report did not
respond to the grievance I filed, but rather to an issue completely
separate and never grieved.

In the latter part of June of 2005, I was assigned to a dorm at Pontiac
Farm with five other inmates. During that time an incident arose where the
dorm officer, Michael P. Mesch, Badge Number 3240, would not allow us to use
the washrooms. Collectively we complained to Officer Mesch and requested to
speak to a lieutenant. Shortly thereafter, a lieutenant and major arrived.
While all six of us addressed the problem to Officer Mesch's supervisors, I
took a more commanding role by producing the rule manual to elaborate on the
error in Officer Mesch's judgment. Both the lieutenant and major listened
to the complaint, then overrode Officer Mesch by allowing us to use the
washroom.

Following this event, Officer Mesch began a series of acts against me,
which led to the disciplinary report which served the basis of a grievance
that is the subject of this letter. The acts included writing two other
disciplinary reports, and taking me to the lieutenant's office. However,
I do not complain of the two reports.

On July 12, 2005, Officer Mesch wrote me a disciplinary report charging
me with Intimidation or Threats and Dangerous Communications (the report I
grieve). (See attached) The report detailed a purported incident that took
place at approximately 2:15pm in D-dorm at Pontiac Farm. Officer Mesch
essentially detailed how I supposedly made threatening statements and
gestures toward him when I was on the phone.

I was then taken to segregation on July 12, 2005. On July 13, 2005, I
was served with the disciplinary report. Along with the allegations in the
report, I noted that my temporary confinement in segregation was not even
authorized until the day after I was placed in segregation.

1

On July 20, 2005, the Adjustment Committee held a hearing. At that time, I informed the committee of Officer Mesch's aforestated actions following the complaints to his supervisors. I further stated that I was not on the phone at the time alleged in the report, but rather was in the major's office; that I never made any threatening actions regaring Officer Mesch; and, that the report was patently false and written in retaliation for my prior complaint against Officer Mesch. Lt. Ellinger subsequently listened to a phone conversation (most likely a phone conversation that took place closest to the time alleged in the report) and could not substantiate Officer Mesch's allegations. Consequently, the committee dismissed the disciplinary report. (See attached Final Summary Report)

I then filed a grievance over the incident, which was stamped showing it was received by Pontiac Correctional Center in July of 2005, and given the grievance number 040912. (See attached) Unfortunately, this is where the problem occurred to which I now direct to you. When P. Hastin, the Grievance Officer completed the Report (also attached), he never addressed the actual grievance that I filed. While the grievance number in his report identifies that the nature of the grievance pertains to the "IDR of 7-12-05 by C/o Mesch," the report addresses a wholly different matter that I never grieved at any time. Specifically, Grievance Officer Hastin addressed a different disciplinary report written by Officer Mesch for Violation of Rules. Thus, the issues I grieved were deliberately sidestepped. Grievance Officer Hastin doesn't remotely address the true nature of my grievance. In fact, I never filed any grievance regarding a Violation of Rules charge, and Hastin's reponse cannot even be construed from the grievance I filed.

The allegations in my grievance, and articulated with more clarity herein are quite serious. The Grievance Officer and Warden's review of the matter is inexplicable, and I request that the Administrative Review Board take action. If the Board desires that a hearing is needed, I will provide any information needed.

Thank you, and I will look forward to your response.

Sincerely,

*David Bivens*

David Bivens

**RECEIVED**

SEP 1 9 2005

**OFFICE OF INMATE ISSUES**

cc: File

2



**Rod R. Blagojevich**
Governor

**Illinois**
Department of
**Corrections**

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

October 13, 2005

David Bivens
Register No. N94630
Western Illinois Correctional Center

Dear Mr. Bivens:

This is in response to your grievance received on September 19, 2005, regarding a disciplinary report dated July 12, 2005, which was alleged to have occurred at Pontiac Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The 7/12/05 disciplinary report written by C/O Mesch citing 404-Violation of Rules (property box) was reviewed. The report was served on 7/12/05.

The Pontiac Programs Committee reviewed the report (**200503460/1**) on 7/21/05.  You were found guilty of 404. Disciplinary action recommended was 1-month commissary restriction.  The CAO concurred on 7/22/05.

The Grievance officer's report (040912) and subsequent recommendation dated August 25, 2005 and approval by the Chief Administrative Officer on August 30, 2005 have been reviewed.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied.

FOR THE BOARD: _____

Jackie  Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED:_____

Roger E. Walker Jr.
Director

cc:    Warden Polk, Western Illinois Correctional Center
David Bivens, Register No. N94630

David Bivens
Reg. No. N94630
Western Illinois Correctional Center
R.R. 4, Box 196
Mt. Sterling, Illinois 62353-9479

Clerk of the United States
District Court, Central
District of Illinois
100 NE Monroe St.
Suite 309
Peoria, Illinois 61602

November 15, 2005

Dear Clerk:

I have sent to you an original and eight copies
of a §1983 Civil Rights Complaint (one for each defendant
and a copy to be returned as filed), the original and two
copies of a Motion for the Appointment of Counsel, and,
a Motion/Petition to Proceed in Forma Pauperis. Could
these documents please be submitted to the court for
consideration.

Also, as my motion for the appointment of counsel
states, I will be released from the Department of
Corrections on November 30, 2005. Accordingly, my new
address will be 3921 North Humboldt Blvd, Apt. #
205, Milwaukee, Wisconsin 53212.

1

I will contact your office as soon as I'm released to confirm my change of address.

Could I please receive a copy of these documents indicating they have been filed? Thank you for your assistance, and please contact me if you have any directions.

Sincerely,

David Bivens

David Bivens